**In re PENTHOUSE TRAVELERS OF ARIPEKA, INC., Debtor.**

**Bankruptcy No. 90–2012–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 12, 1990.

Shirley Arcuri, Tampa, Fla., for debtor.

Jack Weech, Lakeland, Fla., for movant.

## ORDER ON APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case and the matter under consideration is an Application for Payment of Administrative Expense filed by Banks Lumber Co., Inc. (Banks). The facts as established at the final evidentiary hearing relevant to the Application are as follows:

Penthouse Travelers of Aripeka, Inc. (Debtor), is a Florida corporation engaged in manufacturing recreational vehicles. Banks is the owner and operator of the lumber company which was at the time relevant the major supplier of trusses and miscellaneous lumber to the Debtor for use

in its manufacturing process. On February 28, and March 2, 1990, respectively, at the request of the Debtor, Banks delivered to the Debtor two sets of trusses and numerous miscellaneous items of lumber on open account. According to the invoices for the February 28 and March 2 deliveries, the merchandise was billed at $1,841.64 and $6,900.86, respectively. (Banks' Composite Exh. No. 2). On March 6, 1990, the Debtor filed its voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. It is without dispute that the Debtor is indebted to Banks for these deliveries in the total amount of $8,742.50. Banks also delivered lumber to the Debtor on March 6, 1990, the date the Chapter 11 Petition was filed.

On March 9, Banks made a written demand for the return of the merchandise delivered on February 28 and March 2, 1990, pursuant to *Fla.Stat.* § 672.702. (Banks' Exh. No. 1). On the same day, the sales manager of Banks, having learned about the fact that the Debtor filed its Chapter 11 Petition, visited the premises of the Debtor and claimed to have seen some of the trusses which were purchased on open account from Banks still stored and not yet incorporated in the RV models manufactured by the Debtor. It is without dispute that the Debtor never returned the merchandise and has since incorporated the lumber into RV models which have already been shipped to customers.

Based on the foregoing, it is the contention of Banks that it is entitled to an allowance in the amount of $8,742.50 as an administrative expense on the basis that "the goods have been retained by the Debtor for the benefit of the estate." [sic]

Banks' right to the allowance of costs of administration, although not articulated at all in the Application, apparently is based on § 546(c) of the Bankruptcy Code which provides in pertinent part as follows:

**§ 546. Limitations on avoiding powers**

(c) ... the rights and powers of a trustee ... are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor. . . .

This Section further provides that a court may deny the reclamation, but only if the court grants to the seller an administrative claim priority pursuant to § 503(b) of the Bankruptcy Code. Of course, an allowance for administrative costs under § 546(c) can only be granted if the seller of goods has a right to reclaim the goods sold and the right is denied by the court. § 546(c)(2)(A). Thus, the threshold question is whether or not Banks has met the requirements for reclamation of both *Fla.Stat.* § 672.702 and § 546(c) of the Bankruptcy Code.

The reclamation right of a seller of goods to an insolvent was discussed extensively by the Eleventh Circuit Court of Appeals in the case of *In re Rawson Food Service, Inc.*, 846 F.2d 1343 (11th Cir.1988). In this case the Eleventh Circuit noted that § 546(c) provides the exclusive remedy for a seller of goods who seeks to reclaim goods from a debtor, and that in order to reclaim goods from a debtor in bankruptcy pursuant to § 546(c), 1) there must be a statutory or common law right to reclaim the goods; 2) the debtor must have been insolvent when he received the goods and 3) there must be a written reclamation demand within ten days after the debtor received the goods. *Id.*, at 1347. The Court also recognized the well-established principle that a seller "cannot reclaim goods which the debtor does not possess when it receives the reclamation demand." *Id.*, at 1347, *citing, In re New York Wholesale Distributors Corp.*, 58 B.R. 497, 500 (Bankr.S.D.N.Y.1986); *In re Rozel Industries, Inc.*, 74 B.R. 643 (Bkrtcy.N.D.Ill. 1987); *In re Flagstaff Foodservice Corp.*, 56 B.R. 899 (Bkrtcy.S.D.N.Y.1986).

 *Fla.Stat.* § 672.702 provides a statutory right of reclamation, and there is no dispute that Banks made the necessary written demand before ten days after the Debtor's receipt of the lumber, as required

**228**

by § 546(c) of the Bankruptcy Code. Both *Fla.Stat.* § 672.702 and § 546(c) of the Bankruptcy Code, as noted above, require as a condition precedent to the reclamation evidence that at the time the buyer received the goods, the buyer was insolvent. The mere fact that the Debtor filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on March 6, 1990, is of itself insufficient to establish that the Debtor was insolvent on February 28 and March 2, 1990, respectively, or even on the date it filed its voluntary Petition. However, the Debtor's Schedule of Assets and Liabilities filed at the commencement of this case reflect assets in the amount of $218,754.97, with liabilities of $642,625.81, clearly indicating insolvency at the time of the bankruptcy filing.

Because of this, this Court could also presume the Debtor was insolvent on the date of the deliveries, February 28 and March 2, 1990, had Banks presented evidence indicating that the Debtor's financial situation had not changed materially from February 28 through March 6. *In re Ohio Corrugating Co.*, 91 B.R. 430 (Bankr.N.D. Ohio 1988). The record is devoid of evidence to this effect and, therefore, Banks has failed to prove the Debtor's insolvency at the relevant time periods.

Banks has also failed to present sufficient credible evidence to establish that the goods sold on February 28 and March 2, 1990, respectively, were in fact identifiable and still in the Debtor's possession at the time the demand for return of the goods was made, i.e., on March 9, 1990. As already noted, it is well established that a seller cannot reclaim goods which the debtor does not possess when he receives the reclamation demand. *In re Charter Co.*, 54 B.R. 91, 92 (Bkrtcy.M.D.Fla.1985) ("Charter II") ("Implicit within § 546 is the additional requirement that the goods be identifiable and in the possession of the debtor on the day of demand.") *In re Coupon Carriers Co.*, 77 B.R. 650 (N.D.Ill. 1987); *In re Wheeling–Pittsburgh Steel Corp.*, 74 B.R. 656 (Bkrtcy.W.D.Pa.1987); *In re Bosler Supply Group*, 74 B.R. 250 (N.D.Ill.1987); *Archer Daniels Midland Co. v. Charter International Oil Co.*, 60 B.R. 854 (M.D.Fla.1986); *In re New York Wholesale Distributors Corp, supra.*

The evidence on this last point is at best in equilibrium and at most permits a possible inference that at least some of the trusses were still in the delivered stage and identifiable when the demand was made. The evidence presented in support of the other merchandise, i.e., miscellaneous lumber, however, is woefully short of the degree of proof necessary to warrant the conclusion that the lumber sold to the Debtor on February 28 or March 2, 1990, respectively, was still in the possession of the Debtor on March 9, 1990.

In light of the foregoing, this Court is constrained to conclude that the Application for Payment of Administrative Expense sought by Banks cannot be granted, and Banks' claim is only entitled to be treated as a prepetition general unsecured claim in this Chapter 11 case. Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Application for Payment of Administrative Expense is disapproved without prejudice, with leave granted to Banks to file a general unsecured claim in the amount of $8,742.50.