In the Matter of CROFTON
& SONS, INC., Debtor.

TATE CHEESE COMPANY,
INC., Plaintiff,

v.

CROFTON & SONS, INC., Defendant.

Bankruptcy No. 91–1501–8B1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 30, 1992.

Don M. Stichter, Tampa, Fla., for debtor-defendant.

J. Meredith Wester, Tampa, Fla., for plaintiff.

ORDER GRANTING DEBTOR'S MOTION FOR SUMMARY JUDGMENT TO DETERMINE ADMINISTRATIVE CLAIM AND DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT TO DETERMINE ADMINISTRATIVE CLAIM

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for hearing on Debtor/Defendant's Motion for Summary Judgment to Determine Administrative Claim and Plaintiff's Cross–Motion for Summary Judgment to Determine Administrative Claim. The Court, having heard the argument of counsel and having reviewed the Motion and the Cross–Motion, the record, and the memoranda and supplemental memoranda submitted by the parties, finds as follows:

On September 11, 1990, Tate Cheese Company, Inc. (Tate), delivered $10,925.65 worth of cheese to Crofton & Sons, Inc.

(Debtor). At the time the cheese was delivered, Debtor was insolvent.

On September 20, 1990, Debtor received a letter from Tate demanding that Debtor either immediately pay for the cheese or immediately return the cheese to Tate. In the event Debtor neither paid for the cheese nor returned the cheese, Tate stated it would exercise its right to reclaim the cheese under Section 2–702 of the Uniform Commercial Code.[1] When Debtor received Tate's reclamation demand, Debtor had possession of at least a portion of the cheese.

On February 6, 1991, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.). At the time Debtor filed its petition, Debtor no longer had possession of any of the cheese which had been delivered by Tate. The cheese in Debtor's possession on September 20, 1990, had been sold in the ordinary course of business subsequent to the receipt of Tate's reclamation demand. On May 13, 1991, Tate filed the instant adversary proceeding seeking payment of $10,-925.65 as an administrative expense pursuant to Section 503(b) of the Bankruptcy Code or creation of a lien for the $10,925.65 pursuant to Section 546(c).

 In general, Section 546(c) of the Bankruptcy Code[2] preserves a seller's state law right to reclaim goods from a debtor in bankruptcy. In order to reclaim the cheese from Debtor pursuant to Section 546(c), Tate must establish:

1. a statutory or common law right to reclaim the cheese,

2. Debtor's insolvency when it received the cheese,

3. a written reclamation demand made within ten days after Debtor's receipt of the cheese, and

4. Debtor's possession of the cheese at the time the written reclamation demand was received.

*Flav–O–Rich, Inc. v. Rawson Food Service, Inc. (In re Rawson Food Service, Inc.),* 846 F.2d 1343, 1347–1438 (11th Cir. 1988); *In re Penthouse Travelers, Inc.,* 120 B.R. 226, 227 (Bankr.M.D.Fla.1990); *Toshiba America, Inc. v. Video King, Inc. (In re Video King, Inc.),* 100 B.R. 1008, 1013–1014 (Bankr.N.D.Ill.1989).

The parties agree that Section 672.702(2) of the Florida Statutes[3] provides a statutory basis for Tate's assertion of a right of reclamation. Debtor concedes it was insolvent when it received the cheese; Debtor concedes it received a written reclamation demand within ten days of receipt of the cheese; and Debtor concedes it possessed at least a portion of the cheese when it received the written reclamation demand.

 Tate contends it has satisfied the requirements of Section 546(c) of the Bankruptcy Code and, consequently, must be accorded either an administrative expense or a lien pursuant to Section 546(c)(2).[4] This Court is not at all sympathetic to Tate's argument.

1. Section 2–702 of the Uniform Commercial Code is codified in Florida as Section 672.702 of the Florida Statutes.

2. Section 546(c) of the Bankruptcy Code provides:

(c) ... the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of *this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—*
(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—
(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or
(B) secures such claim by a lien.

3. Section 672.702(2) of the Florida Statutes provides:

Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt ...

4. Tate does not dispute that Debtor no longer possesses any of the cheese which Tate originally sought to reclaim. Consequently, relief under Section 546(c)(1) of the Bankruptcy Code (*i.e.,* actual return of the cheese) is not possible.

The facts of this case illustrate Tate slept on whatever rights of reclamation it might have had. Tate made a timely, written reclamation demand on September 20, 1990. For over four and one-half months pre-petition and over three months post-petition, Tate did nothing further. Not until Tate filed the instant adversary proceeding on May 13, 1991, nearly eight months after making its reclamation demand, did Tate pursue its rights.

Reclamation is not a self-executing remedy. Since Debtor failed to pay for or return the cheese in response to Tate's written reclamation demand, it was incumbent on Tate to pursue the reclamation demand through appropriate judicial channels. Although Tate fulfilled the technical requirements of Section 546(c) of the Bankruptcy Code and Section 672.702(2) of the Florida Statutes, Tate failed to assert diligently its right of reclamation and, consequently, has lost that right. *See United States v. Westside Bank,* 732 F.2d 1258, 1265 (5th Cir. 1984); *Action Industries (Dollarama) v. Dixie Enterprises (In re Dixie Enterprises),* 22 B.R. 855, 859–860 (Bankr.S.D.Ohio 1982); William D. Hawkland, Uniform Commercial Code Series § 2–702:06 (1991);

Robert D. Albergotti et al, "Tell Luigi to Take the Truck and Bring My Stuff Back": Section 546(c)—Reclamation, Practicing Law Institute (Feb. 1, 1988).

Diligent assertion of any reclamation right was particularly important in the instant case. Tate sought to reclaim cheese which, of course, is a perishable foodstuff. It is incomprehensible to this Court that Tate made a written reclamation demand and then just sat on its rights for nearly eight months. "A right to reclamation is literally an *in rem* right. It must be implemented by immediate possession." *Dixie Enterprises,* 22 B.R. at 859; *In re Buyer's Club Markets,* 100 B.R. 37, 38 (Bankr. D.Colo.1989). Had Tate been interested in regaining possession of its cheese, it should have sought judicial intervention rather than letting almost eight months elapse before pursuing reclamation of its perishable cheese. Tate is asking this Court to establish a rule that a reclaiming seller can make a written reclamation demand and then wait for an unlimited period of time before enlisting judicial assistance in regaining possession of the reclamation goods. The Court declines to do so under the circumstances of this case.[5]

---

5. In *Griffin Retreading Co. v. Oliver Rubber Co. (In re Griffin Retreading Co.),* 795 F.2d 676 (8th Cir.1986), the Court of Appeals for the Eighth Circuit held that a reclaiming seller's delay of 102 days in pursuing its reclamation rights is no basis for denying the dilatory seller reclamation or an alternate remedy under Section 546(c). The Eighth Circuit expressed concern that requiring a reclaiming seller to follow a fruitless reclamation demand with judicial intervention in recovering the property would only foster a race to the courthouse and, further, that the automatic stay of Section 362 precluded the reclaiming seller from proceeding with any state action at law.

This Court does not share the Eighth Circuit's concerns. When self-help proves fruitless, resort to the courts is necessary. Although relief from the stay is required prior to the post-petition institution of any state action at law, a promptly filed adversary proceeding in the Bankruptcy Court could have resolved any dispute between the debtor and the reclaiming seller. Under the Eighth Circuit's concept, once a debtor receives notice of a reclaiming seller's intent to reclaim, that debtor is obligated to hold the goods for redelivery to the seller for an unlimited period of time. This procedure flies in the face of the remedy.

The object of reclamation is to regain possession of the actual goods. Any delay in regaining possession of the goods increases the risk the goods will be dissipated—whether through inadvertence or deliberate design. Therefore, it is in the best interest of the seller to implement the full range of reclamation procedures as soon as possible or face the limited remedy of a money judgment. *See, e.g., Flav–O–Rich, Inc. v. Rawson Food Service, Inc. (In re Rawson Food Service, Inc.),* 846 F.2d 1343 (11th Cir.1988) (adversary proceeding instituted seven days after reclamation demand made); *Silco Distributing Co. v. Buyer's Club Market, Inc. (In re Buyer's Club Market, Inc.),* 100 B.R. 35 (Bankr.D.Colo. 1989) (adversary proceeding and request for temporary restraining order prohibiting debtor from selling, transferring, encumbering or otherwise disposing of the goods filed within one day of the reclamation demand); *Bethlehem Steel Corp. v. Wheeling–Pittsburgh Steel Corp. (In re Wheeling–Pittsburgh Steel Corp.),* 74 B.R. 656 (Bankr.W.D.Pa.1987) (adversary proceeding instituted two days after reclamation demand made); *A.J. Cunningham Packing Corp. v. Restaurant Services, Inc. (In re Restaurant Services, Inc.),* 26 B.R. 215 (Bankr.W.D.Ky.1982) (adversary proceeding and motion for preliminary in-

■ Consequently, Tate has lost whatever reclamation rights it might have had through lack of diligence in asserting those rights. Moreover, since under this ruling Tate does not have a right of reclamation, Tate is not entitled to an administrative expense in the amount of $10,925.65 pursuant to Section 503(b) or creation of a lien for the $10,925.65 pursuant to Section 546(c) of the Bankruptcy Code. *Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 692 (9th Cir.1984).[6] This ruling is without prejudice to Tate to file any unsecured claim.

Since there is no genuine issue as to any material fact and Debtor is entitled to judgment as a matter of law, it is

ORDERED, ADJUDGED AND DECREED that Debtor's Motion for Summary Judgment to Determine Administrative Claim is granted. It is further

ORDERED, ADJUDGED AND DECREED that Tate's Cross–Motion for Summary Judgment to Determine Administrative Claim is denied.

DONE AND ORDERED.

---

junction filed within thirty days of delivery of the reclamation goods).

6. Since Debtor did not honor Tate's reclamation demand, Tate's remedy under state law appears to be either replevin or damages. Since Tate sought neither remedy prior to Debtor's filing of bankruptcy, Tate is not entitled to any greater remedy under the Bankruptcy Code.